**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARK FRENCH | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-14-2263 |
| CORIZON, et al. | * | |
| Defendants | * | |

\*\*\*

## **MEMORANDUM**

Pending in this civil rights case are defendants' motions to dismiss or for summary judgment (ECF 19, 30, and 37)[1] and to seal certain pleadings (ECF 20 and 50). Plaintiff opposes the dispositive motions (ECF 39 and 44), but offers no objection to the motions to seal which shall be granted. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the motions for summary judgment shall be granted and judgment entered in favor of defendants.

### **Background**

Plaintiff Mark French ("French") is an inmate incarcerated at North Branch Correctional Institution ("NBCI") and alleges he is being denied appropriate medical treatment for hepatitis C. He is suing medical care contractors, individual medical care providers, and Department of Public Safety and Correctional Services ("DPSCS") personnel. French claims he has tried for

---

[1] Because French's complaint spans medical treatment covering a period of time where medical care was provided by two different health care contractors, Corizon and Wexford, separate motions were filed on behalf of the same individual health care providers[1] ("medical defendants") in their roles as employees of those providers. ECF 19 and 30. In addition, French named as defendants two members of DPSCS staff, Gregg L. Hershberger, who is the former Secretary of DPSCS, and Frank Bishop, the former warden of NBCI ("correctional defendants"). ECF 37. The motion to dismiss or for summary judgment filed by Wexford's medical defendants is joined and incorporated by reference in the motions filed by the remaining defendants. ECF 30 and 37.

two years to obtain treatment for hepatitis C and was informed by both DPSCS staff and Corizon providers that he would get the treatment when it became available.

Specifically, he claims Rebecca Andrews a registered nurse, informed him in May of 2013 that the treatment was then available, but was not approved. ECF 1 at pp. 3 – 4. French claims that this refusal to treat his condition is causing liver damage and will result in further complications which could result in the need for a liver transplant or death. He claims the current approach is similar to the first 15 years he was ill where his worsening condition was simply documented. *Id*. at p. 4. French states that "[t]here is no good reason to receive this newer treatment due to the fact it has a higher cure rate, up from 40% - 46% to 84% and the newest treatment is up to 92% 'Sovaldi.'" *Id*. He claims that his requests for this treatment have been met with answers that it is not approved by DPSCS or that it is not available at this time. *Id*.

French asserts that in 2008 he completed the Pagasys Hepatitis C Treatment and responded well until the last six month follow-up, when it was discovered that the hepatitis C had returned. On September 29, 2011, French learned of new treatments and requested information regarding Incivek or Victrelis, which he understood to be 30 to 40 % more effective than existing treatment. In response to his request he was told by Dianna Harvey, LPN, who was employed by Correctional Medical Systems,[2] that "FDA approved this medication but state of Maryland DOC has not made the decision about this treatment option" and that his request would be communicated to the chronic care clinic and noted in his records. ECF 1 at p. 5.

On December 23, 2011, French renewed his request for the newer medication and was told by Harvey that the decision regarding whether French could get the new treatment was not a decision that could be made by the chronic care physician, Dr. Ottey. Rather, the decision would

---

[2] Correctional Medical Systems or CMS changed its corporate name to Corizon.

be made by DPSCS based on eligibility requirements because it is very expensive. ECF 1 at p. 5. French's January 8, 2012 request for liver support formulas to be provided until the new treatment was approved was also denied. *Id.*

On February 12, 2012, French filed an "Inmate Grievance" asserting that not treating his serious medical need or providing liver support is killing him. ECF 1 at p. 5. French states the response to his complaint was that the new treatment was unavailable at that time. *Id.*

On April 8, 2012, French again wrote to medical staff regarding the new treatment. He states that in a meeting on April 17, 2012, Rebecca Andrews, RN, responded that the federal Bureau of Prisons (BOP)[3] and DPSCS are keeping French from being treated. Andrews further told French that the approval was forthcoming and that monthly meetings were taking place regarding the new treatment. Again, the expense involved with the treatment was noted. ECF 1 at p. 5.

On July 23, 2012, French again wrote to medical staff asking why the old treatment was still being used when the new treatment is so much more effective. French received a response on August 9, 2012 from Rebecca Leatherman, RN, who informed him that there was no new information regarding the treatment and that she had heard it could possibly be available within the next year. ECF 1 at pp. 5 – 6. French continued to ask about the new treatment at every chronic care appointment. He states he was told by Dr. Ottey and Dr. Joubert that the treatment was still not available and that it is very expensive. *Id.* at p. 6.

On March 13, 2013, French wrote to Leatherman requesting information about the new treatment. Leatherman met with French on March 15, 2013, and told him that the new treatment had been approved and that French should be starting it in July of that year, or not later than

---

[3] French does not allege that BOP guidelines are applicable to him; rather, it appears he relies on them as evidence that the newer medications are available elsewhere.

January of 2014. Leatherman further explained to French he would need to stay in the Western Correctional Institution ("WCI") infirmary because of the side effects. French agreed to the conditions and said he would do whatever he needed to do be treated. Based on his conversation with Leatherman, French told his sister he was going to receive the treatment he needed. ECF 1 at p. 6.

On November 1, 2013, French put in a sick call slip asking to be updated on when he would be started on the new treatment. He states that Dr. Joubert saw him on November 4, 2013, for a chronic care visit and told him he would be starting the new treatment in January. *Id*. Despite that reassurance, French states that on December 30, 2013, he was told in response to another sick call slip regarding the new treatment that it was not yet available because they were "still waiting for approval." ECF 1 at p. 6.

French claims he needs the new treatment because his "LTF levels" are in the high range again. French asserts his efforts to resolve matters without resort to filing a lawsuit have only resulted in delays and conflicting information. ECF 1 at p. 7. As relief, French seeks an order from this court requiring medical treatment,[4] monetary damages, and, if needed, a liver transplant. *Id*. at p. 3.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute

---

[4] Medical defendants filed a reply to French's opposition response which indicates that he is currently receiving treatment with Harvoni, a newer more efficacious medication. ECF 49 at p. 8. Thus, it appears French's request for injunctive relief is now moot.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical

need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Medical defendants admit French suffers from Hepatitis C ("HCV"), but assert his condition has been carefully monitored and treated under existing protocol with drugs approved

at all relevant times. ECF 19.  The treatment protocol at issue was put into place in January of 2012 and required that anyone testing positive for HCV would be enrolled in a chronic care clinic for monitoring and education regarding the condition.  ECF 19 at Ex. 1.  In addition, the protocol requires treatments for HCV to be evaluated and considered by a DPSCS panel comprised of medical providers, mental health care providers, pharmacists, and infectious disease specialists.  Approval or denial of new medications and treatments for HCV rests with the DPSCS panel.  Once a new medication or treatment is approved, the Maryland state legislature must then provide the funding and resources to DPSCS to implement the treatment approved.  *Id*.

At all times relevant to French's claims the only approved treatment for HCV within the DPSCS was Pegylated Inteferon/Ribavrin, which medical defendants explain is a widely used antiviral treatment for HCV.  Medical defendants further assert that the efficacy of the treatment varies from patient to patient, as with all medication.  Treatment of HCV with antiviral drugs has as its goals to achieve sustained eradication of HCV as evidenced by the persistent absence of "HCV RNA in serum" for six months or longer after completing treatment and to prevent progression of cirrhosis, hepatocellular carcinoma, and decompensated liver disease requiring liver transplantation.  ECF 19 at Ex. 1.

French was treated with Pegylated Interferon/Ribavirin in 2008 and 2009, but his HCV did not respond to the treatment and, thus, sustained eradication of HCV was not accomplished. Medical defendants state that despite the non-response to the treatment, French has been "essentially asymptomatic" from HCV except for reports of abdominal discomfort.  They deny that French has become more ill over the period of time he alleges new and improved drugs were developed but were not made available to him.  French's disease status has been monitored

through regular blood tests provided through the chronic care clinic, ultrasound tests of his abdomen, and regular monitoring of possible symptoms. ECF 19 at Ex. 1, p. 4. In his affidavit, Dr. Ottey, the medical director for NBCI, states that from July 1, 2012 through May 10, 2014, French's liver function tests (LFT) were within normal limits.  On May 10, 2014, the LFT was slightly elevated.  *Id*.  On July 17, 2014, an ultrasound of French's abdomen was performed when he reported abdominal discomfort.  The test revealed no abnormalities with his liver, pancreas, gall bladder, or common bile duct.  ECF 19 at Ex. 1, p. 4.

All defendants assert they played no decision-making role in the panel review of medications for approval.  ECF 19, 30, and 37.  French asserts in opposition that all defendants knew about his serious medical condition and failed to intervene on his behalf to secure the treatment that satisfies the "standard of care" applicable for individuals with HCV.   ECF 39. French further claims that there  are material facts in dispute precluding summary judgment.  He relies upon asserted misrepresentations regarding the quality of his health, whether he was "essentially asymptomatic" or complained about symptoms related to HCV infection.  *Id.*

In their reply, medical defendants assert that French's medical record reflects that blood was observed in his stool on a singular occasion and that his regular lab work demonstrated normal hemoglobin and hematocrit levels suggesting he was not suffering from significant bleeding in his gastrointestinal tract.  ECF 49 at p. 12; *see also* ECF 20, Ex. 1, pp. 27 – 28. Additionally, medical defendants state that on April 9, 2015, French was seen for a collegial conference to discuss his HCV and was advised he was scheduled to begin treatment with Harvoni, a newly approved treatment for HCV. ECF 49 at Ex. 1, p. 19.  The treatment plan was developed for French on the recommendation of Dr. Rufael, an infectious disease specialist of Johns Hopkins Hospital, who French maintained in his opposition response,was uninvolved in

his care. ECF 39. French began the Harvoni treatment as scheduled on April 13, 2015, after receiving education regarding side effects and drug interactions. ECF 49 at Ex. 1, p. 22 and Ex. 2. During his treatment with Harvoni, French continues to be monitored in the chronic care clinic. *Id*. at Ex. 1, pp. 23 – 26.

The disputes of fact asserted by French are not material. Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice. Moreover, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). An inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d at 849; *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

While this case has been pending, the claim asserted has in essence changed from one of alleged denial of medical care, to a delay in the care sought. Under either theory, however, the claim fails in light of the medical evidence produced. To the extent French experienced a great deal of contradictory statements regarding when he would be started on a newer, more effective drug, his condition was nevertheless monitored as required by existing protocols. The named defendants were never in a position to expedite the bureaucratic process of approval and did not ignore any serious symptoms of illness as alleged. There is no evidence presented, nor does

French forecast presentation of admissible evidence, proving that the delay in receiving Harvoni caused him harm or needless suffering, or that any of the named defendants played a role in creating that delay. *See Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, . . . [the court] will not second guess the doctors."). As such, defendants are entitled to summary judgment in their favor as to all claims.


May 28, 2015                                   ____/s/_____
Date                                           J. Frederick Motz
                                               United States District Judge